1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                    FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8    ROBERT STEVEN MILLAGER,                    CASE NO.  05-cv-0866 AWI TAG

9              Plaintiff,                        FINDINGS AND RECOMMENDATIONS
                                                 ON PLAINTIFF'S APPEAL FROM
10        vs.                                    ADMINISTRATIVE DECISION

11   MICHAEL J. ASTRUE,[1]
     Commissioner of Social Security,
12
                 Defendant.
13   _____/

14          Claimant  Robert  Steven  Millager  ("Claimant")  seeks  judicial  review  of  an  administrative

15   decision denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security

16   Act ("the Act"), 42 U.S.C. § 401 et seq., and Supplemental Security Income ("SSI") under Title XVI

17   of the Act, 42 U.S.C. § 1381 et seq.

18          Pending  before  the  Court  is  Claimant's  appeal  from  the  administrative  decision  of  the

19   Commissioner of Social Security ("Commissioner").  Claimant filed his complaint on June 30, 2005

20   (Doc. 1), and his opening brief on May 25, 2006.  (Docs. 16. 17).[2]  The Commissioner filed his

21   opposition to the appeal on June 26, 2006.  (Doc. 18).  On July 10, 2006, Claimant filed his reply brief.

22   (Doc. 19).

23   _____

24          [1]  Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social
     Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).
25
            [2]  Claimant refers to his opening brief as a motion for summary judgment, (Doc. 16), and a supplemental
26   Memorandum/Response in Support, (Doc. 17).  The Commissioner entitles his reply brief as a Memorandum/Response in
     Opposition to Appellant's Opening Brief.  (Doc. 18).  Claimant subsequently filed a Memorandum/Response in
27   Opposition . . . Respondent's Opposition .  (Doc. 19).  Although briefs filed in Social Security cases previously were
     deemed summary judgment motions, for several years this Court has termed the documents as "opening briefs,"
28   "responses" or "oppositions," and, "reply briefs."  These Findings and Recommendations continue this trend.

                                                     1

1

**JURISDICTION**

2          On September 27, 2001, Claimant filed concurrent applications for SSI and DIB, alleging an

3  onset date of August 1, 1987 (collectively, "the applications").  (AR 77-79, 278-279).  His applications

4  were denied initially and on reconsideration.  (AR 40, 41, 51-61).

5          After timely requesting a hearing, Claimant and his counsel appeared before Administrative Law

6  Judge ("ALJ") Robert A. Evans on April 29, 2003.  (AR 62, 289-311).  On September 25, 2003, the ALJ

7  issued a written decision ("2003 decision") finding that Claimant was not disabled for purposes of DIB

8  or SSI.  (AR 42-50).  On January 23, 2004, the Appeals Council granted Claimant's request for review,

9  vacated the 2003 decision, and remanded the case to the ALJ.  (AR 70-72).

10          A second hearing was held before ALJ Evans on September 16, 2004.  (AR 312-332).  On

11  October 13, 2004, the ALJ again found that Claimant was not eligible for DIB or SSI.  (AR 15-24).  The

12  Appeals Council denied Claimant's request for review on May 2, 2005.  (AR 8-10).  The Appeals

13  Council's decision, therefore, became the final decision of the Commissioner, which is appealable to

14  the district court pursuant to 42 U.S.C. § 405(g).  The initiation of an appeal in the district court must

15  be commenced within sixty (60) days of the Appeal Council's decision.  Id.  On June 30, 2005, Claimant

16  timely filed this action.  (Doc. 1).

17

**STATEMENT OF FACTS**

18          The facts have been presented in the administrative hearing transcripts, the ALJ's 2004 decision,

19  and the briefs filed by Claimant and the Commissioner, and, therefore, will only be summarized here.

20  In his applications, Claimant alleged that he could not work because he suffered from discogenic and

21  degenerative back disorders, which caused him to suffer chronic pain and for which he took

22  acetaminophen as needed.  (AR 86, 280).  Claimant added that he had epilepsy, a "bad hip," and

23  occasionally fainted.  (AR 94, 280).

24  First Administrative Hearing

25          At the April 29, 2003, hearing, Claimant, represented by counsel, testified that he was born on

26  January 18, 1956, making him 47 years old.  (AR 291-292).  Claimant further stated that he completed

27  the eleventh grade and was able to read and write, but he never received a GED.  (AR 292-293).  He

28

2

1  stated that he last worked before 1990,[3] adding that he could not return to work because of his back

2  problems, which included muscle spasms and, more recently, a herniated disc. (AR 292-293).

3           Regarding his ailments, Claimant testified that he has epilepsy, although he was seizure-free from

4  the end of 2001 until March 2003. (AR 293-294). He added that Dr. Lingaiah Janumpally had treated

5  him for his epilepsy, but, because he lacks insurance, he no longer sees any doctors. (AR 294).

6  Claimant further testified that he suffers up to three headaches per month, but he does not use a cold

7  pack or any medicine, the latter because he is concerned that it may be contraindicated with the

8  medication he takes for his epilepsy. (AR 293, 295). When the ALJ asked Claimant if he tried laying

9  down to relieve his headaches, Claimant responded that, for the past two months, he spends twelve hours

10  in bed because of his pinched nerve. (AR 295-296). Claimant explained that, on March 1, 2003, he

11  pinched a nerve in his back while he was walking, for which he was hospitalized and an MRI was

12  scheduled. (AR 295-296). He acknowledged that he had yet to have the MRI because it ordered at Kern

13  Medical Center ("KMC"), which necessitated that his father rent a car and drive to Bakersfield.

14  (AR 298-299). Claimant explained that the MRI could not be scheduled until KMC sent him the

15  requisite forms to complete because he did not have insurance, which forms had not been sent.

16  (AR 299). He added that, at present, his back ailment is the worst of his impairments. (AR 296).

17           With respect to his daily activities, Claimant testified that he lives with his parents. (AR 297).

18  He spends most of the day painting and sanding the woodworking items that his father creates.

19  (AR 297). Claimant stated that he would accept a job offer doing the same activities, but added that he

20  might not be able to drive to the site because he would lose his drivers license if the state knew he had

21  epilepsy. (AR 297-98). Claimant admitted that he occasionally drove his father's car. (AR 298).

22           Ronald James Millager ("Ronald"), Claimant's father, testified on his son's behalf. (AR 301-07).

23  According to Ronald, Claimant has lived with him since 1987. (AR 301). Ronald testified that

24  Claimant has had back problems since he suffered an injury in Oklahoma, which has required three

25  hospitalizations. (AR 301). He added that Claimant constantly complains of lower back pain.

26

27           [3] In the Disability Report and Work Background forms that Claimant completed as part of his DIB application,
   he indicated that he had worked as a truck/bulk loader for Shawnee Milling Co., a grain mill located in Oklahoma, from

28  1982 until he was laid off on August 1, 1987. Claimant reported that August 1, 1987 was the date he stopped working.
   (AR 94-95, 121).

1   (AR 302).  Ronald recently drove Claimant to KMC, and the doctor was sure that he had a herniated

2   disc, which the doctor said caused severe pain and numbness in the leg and ankle.  According to Ronald,

3   Claimant had complained that he suffered those symptoms.  (AR 302-303).  He further testified that

4   KMC injected Claimant with some unknown medicine, and, one day later – approximately two weeks

5   ago – Claimant had a severe seizure.  (AR 303-304).  Ronald reported that Claimant only is aware of his

6   severe seizures, but he often had minor seizures during which his hand would start moving.  (AR 304).

7       With respect to his seizures, Ronald testified that they began three-to-five years earlier, and he

8   has no idea why they started.  (AR 305).  Ronald stated that his wife had noticed that Claimant seemed

9   disorientated and was stumbling, and she found his dentures in the lawn, so he likely had a seizure then.

10  (AR 305).  Ronald reported that Janumpally performed diagnostic tests for Claimant's seizures, and he

11  currently takes Dilantin.  (AR 305-306).

12      As to other ailments, Ronald stated that, since approximately 1998, Claimant has had constant

13  headaches, which can last two or three days.  (AR 306).  In addition, he stated that Claimant seems to

14  have a displaced right hip.  (AR 302).

15      Ronald then testified about Claimant's activities, confirming that his son assists with his

16  woodworking.  (AR 307).  Ronald, however, pointed out that he is not always working on a project, and

17  further testified that Claimant helped only when he felt like it, and then for only one or two hours.

18  (AR 307).  Moreover, his son takes a nap every day, is disoriented and confused, and cannot sit long in

19  one place because of his back.  (AR 307).

20      The ALJ then questioned vocational expert ("VE") Ruth Arnush, who testified that Claimant's

21  past relevant job as a grain loader was classified as heavy, unskilled work.  (AR 308).  The ALJ posed

22  three hypothetical questions, all of which included persons of Claimant's age, and with the same

23  education and work history.  (AR 308).  In hypothetical number one, the individual had the following

24  capabilities and limitations: (1) lift and carry twenty five pounds frequently and fifty pounds

25  occasionally; (2) stand, walk, and sit six hours; (3) occasionally climb, balance, crouch crawl, stoop, and

26  kneel; and (4) avoid exposure to seizure-related hazards or activities, such as unprotected heights and

27  vats of acid.  (AR 308).  VE Arnush testified that there were entry level, medium exertional level jobs

28  available in sufficient numbers that the hypothetical person could perform, and she provided one

4

example – a hand packer – with its correlating Dictionary of Occupational Title ("DOT") number, and the available regional and national numbers.  (AR 309).

In his second hypothetical, the ALJ imposed the following limitations: (1) none with respect to standing or walking; (2) lifting and carrying ten pounds frequently and fifteen pounds occasionally; (3) sitting for two hours before having to change positions; (4) occasional bending and stooping; and (5) the critical aspects of the job could not include reading and writing because of the individual's poor communication skills.  (AR 309).  The VE testified that there were sedentary, unskilled jobs available regionally and nationally that the hypothetical person could perform, citing a glass worker as one of those jobs.  (AR 309-310).  The ALJ's third hypothetical presented the same individual, but added that he would have to lie down and rest for two hours during an eight hour period due to his inability to concentrate and physical pain.  The VE opined that this person would not be able to work.  (AR 310).

The ALJ concluded the hearing and, on September 25, 2003, issued a decision finding Claimant not eligible for benefits.  (AR 42-50).  At the request of Claimant, the Appeals Council reviewed and vacated the ALJ's September 2003 decision.  (AR 66-72).  In its order, the Appeals Council directed the ALJ to hold a new hearing and to obtain and/or address four issues that it found lacking in the vacated decision.  (AR 70-72).  The Appeals Council specifically ordered the ALJ to:

Obtain additional evidence concerning the claimant's mental cognitive and communicative impairments . . . The additional evidence may include, if warranted and available, consultative examinations with psychological testing, speech and language evaluation, and medical source statements about what the claimant can still do despite these limitations.

Give further consideration to the medical source opinions . . . and explain the weight given to such opinion evidence.  [T]he Administrative Law Judge will request the treating source, Dr. Janumpally, to provide additional evidence and/or further clarification of his opinions and medical source statements about what the claimant can still do despite the impairments. . . .

Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations [and]

Provide adequate rationale of the consideration given to the testimony from the claimant's father as a lay witness during the hearing, as required in Dodrill v. Shalala, 12 F.3d 915 (9th Cir. 1993).

(AR 71-72).

///

5

1  Second Administrative Hearing

2      At the September 16, 2004 hearing, the ALJ first noted that, pursuant to the Appeals Council's

3  order, he had issued a subpoena to ensure that Dr. Janumpally would appear and testify at the hearing,

4  but the doctor was not present and had not contacted ALJ Evans.  The ALJ discussed various options,

5  which included attempting to have the Justice Department enforce the subpoena, ignoring Dr.

6  Janumpally's record evidence altogether, or construing his assessment as well as possible, and

7  determined that the latter choice would be the most efficient.  (AR 314-315).  ALJ Evans then ruled that

8  Claimant's father would be allowed both to represent him and to testify on Claimant's behalf.

9  (AR 314-315).

10     During his testimony, Claimant reiterated many of the statements that he made in the April 29,

11 2003, hearing.  (AR 315-316).  Claimant reported that his herniated disc prevented him from bending,

12 that he had problems understanding things, and that he could not sit or stand for long periods of time.

13 (AR 317-318).  According to Claimant, his inability to control his back precluded him from moving

14 normally.  (AR 318).  Despite these ailments, he saw his doctors only when he needed to have his

15 prescriptions refilled, and he had never sought psychological treatment.  (AR 319).

16     Ronald again testified, stating that the only additions to his 2003 testimony consisted of the letter

17 he had written to the Appeals Council, an evaluation completed by Dr. Sabetian, a neurologist, and a list

18 of Claimant's medications.  (AR 319-321).  Ronald further testified that his son's medications –

19 Neurontin and Dilantin – are so strong that he becomes dizzy and has to take daily naps, adding that the

20 pills for his headaches are "really nasty stuff." (AR 322-323).  He acknowledged that Claimant had not

21 suffered a seizure or a hemorrhage since he started taking Dilantin.  (AR 322).

22     The ALJ asked Ronald if Claimant would be able to assemble light weight objects if he could

23 sit and stand at his pleasure, with morning and afternoon breaks, and an hour lunch break.  (AR 323-

24 334).  Ronald responded that he did not think Claimant could do the job because of his need for frequent

25 naps, although he would be willing to try it.  (AR 324-335).  With respect to Claimant's daily activities,

26 Ronald explained that Claimant used hand tools to help with the non-strenuous activities on their large

27 backyard desert, including knocking down tumbleweeds and sand piles, and he occasionally helped with

28 Ronald's woodworking.  (AR 325-326).

1    ALJ Evans again posed three hypotheticals to VE Ruth Arnush, all of which involved an

2    individual of the same age, education, and with the same work history as the Claimant.  In the first

3    hypothetical, the individual had a medium RFC with the following limitations: occasional but not

4    frequent climbing, balancing, crouching, crawling, stooping, and kneeling; avoiding unprotected heights,

5    dangerous machinery, and swimming pools.  (AR 327).  The VE responded that jobs existed in the

6    regional and national economy that the person could perform, such as a cleaner or a grocery bagger.[4]

7    (AR 327).  With respect to the second hypothetical, the ALJ presented an individual who could lift and

8    carry  up to fifteen pounds if he used both hands; sit up to two hours; had to avoid all bending and

9    stooping; could walk without restrictions but not for long distances; and, because of his poor

10   communication skills, could not work in a job that required extensive written or oral communications.

11   (AR 328).  The VE offered two examples of sedentary, unskilled work that such an individual could

12   perform:  a sticker and a stem manager.  (AR 328).  The VE opined that each of the four jobs that she

13   discussed were consistent with a restriction on bending in addition to the limitations posed by the ALJ.

14   (AR 328-330).

15       In the third hypothetical, the ALJ asked if the identified jobs could be performed by the same

16   person with the same limitations if he also was withdrawn and needed to nap or lie down for two hours

17   during an eight-hour period as a result of his pain, medication, discomfort, and inability to communicate

18   or grasp concepts.  (AR 330).  The VE responded that the described individual would not be able to

19   perform any work.  (AR 331).

20                                    **STANDARD OF REVIEW**

21       Congress has provided a limited scope of judicial review of a Commissioner's decision.  42

22   U.S.C. § 405(g).  A court must uphold the Commissioner's decision to deny benefits, made through an

23   ALJ, when the decision is based on the proper legal standards and is supported by substantial evidence.

24   Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).  Substantial evidence is more than a mere scintilla

25   but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989) (quotations

26   omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a

27

28       [4]  As she did in the first hearing, VE Arnush provided the DOT numbers assigned to each job and the number of
     jobs available both regionally and nationally for every job.  (AR 327-28).

                                          7

1   conclusion." Webb, 433 F.3d at 686, citing Richardson v. Perales, 402 U.S. 389, 401 (1971). Moreover,

2   such "inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" are

3   accorded the same consideration as is substantial evidence as defined above. Mark v. Celebrezze, 348

4   F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the

5   evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir.

6   1989) (quotation and citation omitted).

7           It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402

8   U.S. at 400. If the evidence supports more than one rational interpretation, the court must uphold the

9   decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is

10  substantial evidence to support the administrative findings, or if there is conflicting evidence that would

11  support a finding of either disability or non-disability, the Commissioner's decision is conclusive.

12  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by

13  substantial evidence will be set aside if the proper legal standards were not applied in weighing the

14  evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432,

15  433 (9th Cir. 1987).

16                                  **RELEVANT LEGAL FRAMEWORK**

17          The Social Security Act defines "disability" as the "inability to engage in any substantial gainful

18  activity by reason of any medically determinable physical or mental impairment which can be expected

19  to result in death or which has lasted or can be expected to last for a continuous period of not less than

20  twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant

21  shall be determined to be under a disability only if his impairments are of such severity that claimant is

22  not only unable to do his previous work but cannot, considering claimant's age, education and work

23  experiences, engage in any other substantial gainful work which exists in the national economy.

24  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

25                                  **Sequential Evaluation Process**

26          The Commissioner has established a five-step sequential evaluation process for determining

27  whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged

28  in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If

                                                    8

1  he is not, the decision maker proceeds to step two, which determines whether the claimant has a

2  medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

3       If the claimant does not have a severe impairment or combination of impairments, the disability

4  claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares

5  the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to

6  be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R.

7  Pt. 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant

8  is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be

9  disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents

10  the claimant from doing work performed in the past.  If the claimant is able to perform his previous

11  work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant cannot perform this

12  work, the fifth and final step in the process determines whether he is able to perform other work in the

13  national economy in view of his age, education and work experience.  20 C.F.R. §§ 404.1520(f),

14  416.920(f).  See Bowen v. Yuckert, 482 U.S. 137 (1987).

15       The initial burden of proof rests upon a claimant to establish a prima facie case of entitlement

16  to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  In terms of the five-step

17  sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant

18  as to steps one to four," while at the same time noting that an ALJ's *affirmative duty* to assist a claimant

19  to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden

20  at each step."  Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original).  The

21  initial burden is met once a claimant establishes that a physical or mental impairment prevents him from

22  engaging in his previous occupation.  The burden then shifts to the Commissioner to show (1) that the

23  claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist

24  in the national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir.

25  1984).

26                          **ADMINISTRATIVE FINDINGS**

27       As a preliminary matter, the ALJ chose to disregard the opinion of treating physician Dr.

28  Janumpally because he failed to comply with the ALJ's subpoena compelling the doctor to appear at the

9

1    second administrative hearing and submit additional medical records that supported his opinion.

2    (AR 19, see AR 25 (subpoena)).

3         The ALJ found at step one that Claimant had not engaged in substantial gainful activity since his

4    alleged onset date of August 1, 1987.[5]  (AR 22, 89).  At step two, the ALJ determined that Claimant

5    suffered from an impairment or combination of impairments that were severe, including mild and

6    moderate degenerative disc disease and a controlled seizure disorder.  (AR 23).  At step three, the ALJ

7    found that Claimant's impairments were not sufficiently severe to meet or equal the Listings, 20 C.F.R.

8    Pt. 404, Subpt. P, App. 1.  (AR 19, 23).  At step four, the ALJ determined that Claimant was not able

9    to perform his past relevant work, and had no transferable work skills.  (AR 19, 23).  At step five, the

10   ALJ found that, given that Claimant retained a RFC to perform a limited range of medium work, there

11   were a significant number of jobs that he would perform, as attested to by the VE.  (AR 19, 23).  The

12   ALJ further noted that he found Claimant's testimony less than credible.  (AR 23).  Accordingly, the ALJ

13   concluded that Claimant was not disabled and, thus, not eligible for benefits under Title II or Title XVI

14   of the Act.  (AR 23).

15                                          **ISSUES**

16        Claimant contends that the ALJ erred as a matter of law.  Essentially, Claimant alleges that the

17   ALJ's failure to comply with the Appeals Council's orders on remand that he clarify the discrepancies

18   between Dr. Janumpally's treatment records and opinion, and develop the record as to his mental

19   impairments, was a violation of procedural due process.  Claimant further contends that the ALJ did not

20   abide by the applicable sections of the Code of Federal Regulations ("CFR") and this Circuit's case law,

21   although the Appeals Council referenced various regulations and Social Security Rulings, in its remand

22   order.  (Doc. 17).[6]

23   ///

24   _____

25        [5] In the body of the decision, the ALJ stated that Claimant had not engaged in "substantially gainful activity
     since filing his Supplemental Security Income application."  (AR 19).  Claimant's SSI application is dated September 20,
26   2001, and was signed on September 25, 2007.  (AR 278-79).

27        [6] Although Claimant weaves facts into his opening brief that relate to the treating doctor's opinion and
     Claimant's mental impairments, he does so in light of general discussion regarding the ALJ's obligations under the law
     and pursuant to the Appeals Council's order to develop the record and/or gather additional information.  (See generally
28   Doc. 17).

                                          10

1       As discussed above, this Court must uphold the Commissioner's determination that a claimant

2 is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence

3 in the record as a whole to support the decision.

4 **<u>DISCUSSION</u>**

5       Claimant asserts that the ALJ erred in limiting his attempts to clarify the discrepancies between

6 Dr. Janumpally's records and his opinion and to secure Dr. Janumpally's attendance at the hearing.

7 (Doc. 17, p. 5).  He further alleges that the ALJ neglected his affirmative obligation, the Appeals

8 Council's mandate, the CFR , and  Ninth Circuit case law in failing to develop the record through other

9 methods, including, if necessary, arranging for consultative examinations.  (Doc. 17, pp. 8-12).

10 <u>Opinion of Treating Physician</u>

11       The opinions of treating doctors should be given more weight than the opinions of doctors who

12 do not treat the claimant.  <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir.1998); <u>Lester v. Chater</u>, 81 F.3d

13 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not contradicted by another doctor, it

14 may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.

15 <u>Id.</u> at 830.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject

16 this opinion without providing "specific and legitimate reasons" supported by substantial evidence in

17 the record.  <u>Id.</u> (quoting <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by the

18 ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating

19 his interpretation thereof, and making findings. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.1989).

20 The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain

21 why they, rather than the doctor's, are correct.  <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir.1988).

22       In <u>Orn v. Astrue</u>, ___F.3d ___, 2007 WL 2034287 (9th Cir. July 16, 2007), the Ninth Circuit

23 reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion of an

24 examining physician over that of a treating physician.  "When an examining physician relies on the same

25 clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the

26 examining physician are not substantial evidence.  <u>Orn</u>, 2007 WL 2034287, *5 (citation and quotation

27 omitted).  "By contrast, when an examining physician provides independent clinical findings that differ

28 from the findings of the treating physician, such findings are substantial evidence."  <u>Id.</u> (citation

11

1  omitted).  "Independent clinical findings can be either (1) diagnoses that differ from those offered by

2  another physician and are supported by substantial evidence . . . or (2) findings based on objective

3  medical tests that the treating physician has not [himself] considered."  Id. (citations omitted).

4      If there is "substantial evidence" in the record contradicting the opinion of the treating physician,

5  the opinion of the treating physician is no longer entitled to "controlling weight."   20 C.F.R.

6  § 404.1527(d)(2).  In that event, the ALJ is instructed by § 404.1527(d)(2) to consider the factors listed

7  in  § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician.

8  Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by

9  the treating physician; and the "nature and extent of the treatment relationship" between the patient and

10  the treating physician.  20 C.F.R. § 404.1527(d)(2)(i)-(ii).  Even when contradicted by an opinion of an

11  examining physician that constitutes substantial evidence, the treating physician's opinion is "still

12  entitled to deference."  SSR 96-2p; Orn, 2007 WL 2034287, *6.  "In many cases, a treating source's

13  medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet

14  the test for controlling weight."  Id.

15      In the instant case, Dr. Janumpally submitted a written opinion in December 2002, which he

16  supplemented in a letter dated March 20, 2003.  (AR 202-05).  In his March 2003 opinion, Dr.

17  Janumpally reiterated Claimant's (1) history of idiopathic seizure disorder with ongoing possible partial

18  complex seizures; (2) chronic cephalgia (headaches); (3) chronic low back pain; and (4) back injury

19  since a fall in 1987. (AR 202).  Dr. Janumpally noted that, although Claimant appeared awake and alert,

20  he had very poor communication, concentration, and memory skill, and possibly suffered from a learning

21  disability.[7]  (AR 202).  Dr. Janumpally believed that Claimant was disabled for the reasons specified.

22  (AR 202).  Dr. Janumpally's March 2003 opinion is based, in part, on his interactions with Claimant and

23  Claimant's family and the July 2001 medical records from Antelope Valley Hospital following

24  Claimant's admission after his seizure.  Some, but not all, of the medical records consisted of Dr.

25

26

27

28

---

[7]  Dr. Janumpally did not mention Claimant's deficiencies in concentrating and memory, or the possibility that he had a learning disability, in the December 2002 opinion.  (AR 204-05).

12

1   Janumpally's diagnostic tests and examinations.[8]  (AR 157-180; see 159-61, 169 (Dr. Janumpally's

2   records)).

3         The administrative record is replete with treating and examining consultants who agreed in part

4   with Dr. Janumpally's diagnoses and/or opinion.  (See, e.g. diagnostic tests and a mini-mental state

5   examination confirming mild-to-moderate disc degeneration and a small herniated disc, seizure disorder,

6   cognitive impairments from treating physicians at Kern Medical Facility, dated 2003 (AR 232-35, 265,

7   273); examining consultant concluding Claimant was not disabled although finding slight discogenic

8   disease with tenderness and a well-controlled seizure disorder in 2001 (AR 181-86)).

9         Regardless of whether or not there were medical findings that contradicted Dr. Janumpally's

10  opinions, the ALJ's reason for rejecting Dr. Janumpally's opinion – the doctor's failure to appear in

11  response to a subpoena duces tecum – does not constitute either "clear and convincing" or "specific and

12  legitimate" reasons, based on substantial record evidence, for ignoring the opinion of a treating

13  physician.  Moreover, a treating physician's opinion, even if contradicted by clinical findings or other

14  substantial record evidence, must be accorded some level of deference, even if the opinion no longer is

15  controlling.  Orn, ___ F.3d ___, 2007 WL 2034287, *4-7, SSR 96-2p.  Here, the ALJ ignored Dr.

16  Janumpally's opinion entirely for a non-medical reason, which is a misapplication of the law.  Id.

17  Claimant's Mental Impairments

18        Claimant focuses again on the ALJ's failure to comply with the order of the Appeals Council,

19  ordering that he develop the record as to Claimant's mental impairments and their effect on his ability

20  to work.  He alleges that the ALJ erred when he ignored the remand order, the Social Security Rulings,

21  the regulations, and caselaw, when he did not have Claimant examined by a consultant or otherwise

22  tested for cognitive disorders.  (Doc. 17, pp. 4-8).

23        The Ninth's Circuit's holding in Orn sets forth the proposition that the ALJ must comply with

24  the Social Security Rulings and relevant sections of the Code of Federal Regulations.  See generally

25  Orn, ___ F.3d ___, 2007 WL 2034287.  Section 404.977 of Title 20 of the C.F.R. states, in pertinent

26  part,

27

28        [8]  The signatures on the hand-written charts are not legible.  (AR 157-80).

1   Case remanded by Appeals Council.

2   (a) When the Appeals Council may remand a case. The Appeals Council may remand a
    case to an administrative law judge so that he or she may hold a hearing and issue a
3   decision or a recommended decision. **The Appeals Council may also remand a case
    in which additional evidence is needed or additional action by the administrative
4   law judge is required**.

5   (b) Action by administrative law judge on remand. **The administrative law judge shall
    take any action that is ordered by the Appeals Council** and may take any additional
6   action that is not inconsistent with the Appeals Council's remand order.

7   20 C.F.R. § 404.977(a) and (b) (emphasis added).  See, e.g., Tauber v. Barnhart, 438 F.Supp.2d 1366,

8   1375-76 (N.D.Ga. 2006) (remanding the action, in part, to the agency because the ALJ did not comply

9   with the Appeals Council's remand order).

10      In the case sub judice, the Appeals Council  directed the ALJ to

11      Obtain additional evidence concerning the claimant's mental cognitive and
        communicative impairments [including], if warranted and available, consultative
12      examinations with psychological testing, speech and language evaluation, and medical
        source statements about what the claimant can still do despite these limitations
13
        (AR 72).  Instead of following this mandate, the ALJ found that Claimant's alleged mental impairments
14
        were not severe because treating physician Dr. Sabetian had not referred Claimant for further testing or
15
        psychological treatment and any cognitive disorders would not preclude Claimant from performing
16
        unskilled work.  (AR 20).  The ALJ did not comply with the remand order directing him to obtain
17
        additional evidence, either from consulting or treating physicians, concerning Claimant's cognitive
18
        disorders and any affect they might have on his ability to work.  Accordingly, it is recommended that
19
        this matter be remanded for further development, in accordance with the Appeals Council's order.
20
## CONCLUSION AND RECOMMENDATIONS
21
        For the reasons discussed above, this Court finds error in the ALJ's application of the law.  The
22
        undersigned notes that the ALJ's decision failed to comply with the Appeals Council's orders on
23
        remand, the Social Security Rulings, or the applicable sections of the Code of Federal Regulations,
24
        which must be followed before the district court can affirm the ALJ's decision.  Orn v. Astrue, ___ F.3d
25
        ___, 2007 WL 2034287 (9th Cir. July 16, 2007).  Accordingly, this Court RECOMMENDS as
26
        follows:
27
        ///
28
                                                    14

1    1.    That Claimant's Social Security complaint be GRANTED, and the ALJ be required to

2    ascertain on REMAND whether Claimant is eligible for both Supplemental Security Income under Title

3    XVI of the Act, 42 U.S.C. § 1381 et seq. and Disability Insurance Benefits through December 30, 1992

4    under Title II of the Act, 42 U.S.C. § 401 et seq.;

5    2.    That the matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for

6    development of the record and further consideration, consistent with these Findings and

7    Recommendations and the Appeals Council's order, of Claimant's status as disabled, including the

8    weight to be given to treating physician Dr. Janumpally and the extent, and impact on disability, of

9    Claimant's cognitive impairments; and

10   3.    That Judgment be ENTERED for Claimant Robert Steven Millager and against Defendant

11   Michael J. Astrue.

12   These Findings and Recommendations are submitted to the United States District Judge assigned

13   to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than

14   fifteen (15) days after service of these Findings and Recommendations, any party may file written

15   objections to these Findings and Recommendations with the Court and serve a copy on all parties and

16   the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-304(b).  Such a

17   document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

18   Responses to objections shall be filed and served no later than fifteen (15) days after filing of the

19   objections and otherwise in compliance with this Court's Local Rule 72-304(d).  A copy of the responses

20   shall be served on the Magistrate Judge.   The District Judge will review the Findings and

21   Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file

22   objections within the specified time may waive the right to appeal the District Judge's order.  Martinez

23   v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

24

25   IT IS SO ORDERED.

26   Dated:   **August 9, 2007**                                        **/s/ Theresa A. Goldner**
                                                                     UNITED STATES MAGISTRATE JUDGE
27   _____

28